IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KRYSTAL MEGAN DELIMA                                              PLAINTIFF

v.                          CASE NO. 5:17-cv-5244-TLB

WAL-MART STORES ARKANSAS, LLC                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are:

- Defendant Wal-Mart Stores Arkansas, LLC's ("Walmart") Motion for Summary Judgment (Doc. 44), Brief in Support (Doc. 45), and Statement of Facts (Doc. 46); Plaintiff Krystal Megan Delima's Response in Opposition (Doc. 49), Brief in Support (Doc. 50), Statement of Facts (Doc. 54), and Statement of Disputed Facts (Doc. 55); and Walmart's Reply (Doc. 56);

- Ms. Delima's Motion to Strike Uncertified Rough Draft Transcript of Her Deposition (Doc. 51) and Brief in Support (Doc. 60); and Walmart's Response in Opposition (Doc. 64) and Brief in Support (Doc. 65);

- Ms. Delima's Motion to Strike Christopher Milam Affidavit (Doc. 53) and Brief in Support (Doc. 57); and Walmart's Response in Opposition (Doc. 62) and Brief in Support (Doc. 63);

- Ms. Delima's Motion for Leave to File a Sur-Reply to Walmart's Motion for Summary Judgment (Doc. 68) and Brief in Support (Doc. 69); and Walmart's Response in Opposition (Doc. 73) and Brief in Support (Doc. 74); and

- Ms. Delima's Motion to Suppress All Parts of Her Own Deposition (Doc. 70) and Brief in Support (Doc. 71); and Walmart's Response in Opposition (Doc. 75) and Brief in Support (Doc. 76).

For the reasons explained below, these motions are all **DENIED**.

### I. BACKGROUND

The arrival of the holiday season brings with it the lure of special bargains at big box retailers like Walmart. Ms. Delima attended one such sale at Walmart in Siloam

1

Springs, Arkansas on November 27, 2014. She was particularly interested in purchasing two items: an iPad tablet and a Samsung Galaxy tablet. The sales on the iPad tablet began at 6:00 PM. Ms. Delima and her daughter arrived at the store and lined up in the designated lines that Walmart staff had created. She was able to purchase an iPad tablet without incident.

By around 6:20 PM, Ms. Delima began to move towards the area where the Samsung Galaxy tablets were located. Because the sale on those tablets did not start until 8:00 PM, she was one of the first people to line up for that sale. As the sale drew closer, the crowd behind her grew extensively. Walmart associates and off-duty policemen helped direct customers and stood in front of the merchandise until shortly before the sale began. Approximately ten minutes before the sale began, Christopher Milam, the manager of this particular Walmart, announced to the crowd that the sale would begin soon and requested that the crowd be calm and courteous. At 8:00 PM, he announced that the sale was open.

According to Ms. Delima, the opening of the sale for the Samsung Galaxy tablets caused panic. The announcement opened a flood gate that sent the crowd rushing towards the merchandise, since Walmart was selling the tablets on a "first come, first-served" basis. Ms. Delima contends that she was pushed by the crowd into the Samsung Galaxy rack, where she remained stuck until everyone was done getting the tablets. Fortunately, one of the tablets managed to hit her stomach and she was ultimately able to purchase the tablet; unfortunately, she contends that she suffered injuries to her back and pinky finger caused by the rushing crowd.

Ms. Delima then brought the present lawsuit against Walmart, contending that it was negligent in how it managed the sale of the Samsung Galaxy tablets that evening. According to Ms. Delima, her injuries stem directly from Walmart's failure to conduct the sale in a safe manner.

Following the close of discovery, Walmart moved for summary judgment. In response, Ms. Delima filed four separate motions seeking to strike various materials, including her own deposition transcript, that were included with Walmart's motion. The Court now turns to the pending motions.

## II. DISCUSSION

### A. Ms. Delima's Motion to Strike Uncertified Rough Draft Transcript

Ms. Delima moves to strike the uncertified rough draft transcript of her deposition that was attached as an exhibit to Walmart's Motion for Summary Judgment. She argues that it must be stricken because, as a draft transcript, it contains erroneous words, misspellings, inconsistencies, etc.

Ms. Delima's Motion to Strike (Doc. 51) will be denied. As an initial matter, because of scheduling conflicts—many of which were due to her own actions—only an uncertified rough draft transcript of the deposition was available at the time the dispositive motions in this case were due.[1] In addition, Ms. Delima was allowed to—and did in fact—submit an errata sheet to correct these typographical errors, and Walmart committed to—and

---

[1] The discovery deadline in this case was October 19, 2018. Walmart began requesting dates to take Ms. Delima's deposition as long ago as August 6, 2018. In response, Ms. Delima objected to an in-person deposition and proposed instead to be deposed by written questions. When that matter could not be resolved at the settlement conference on October 4, 2018, Walmart had to resort to a subpoena, which prompted Ms. Delima to file a Motion to Quash (Doc. 34). It took two subsequent orders of this Court (Docs. 35, 38) before she relented and attended her deposition.

3

did—submit an amended document containing the certified copy of the transcript and the errata sheet (Doc. 72). As such, the Court has considered those documents, and not this unofficial transcript, when ruling on Walmart's motion for summary judgment. There is no compelling reason, therefore, why the unofficial transcript should be stricken. Ms. Delima's Motion to Strike Uncertified Rough Draft Transcript (Doc. 51) is **DENIED**.

### B. Ms. Delima's Motion to Strike Christopher Milam Affidavit

Ms. Delima next seeks to strike Christopher Milam's affidavit (Doc. 53). The motion contends that the affidavit must be stricken because Mr. Milam lacks personal knowledge, fails to set out facts that would be admissible in evidence, and is not competent to testify about these matters.

This motion, too, will be denied. Christopher Milam was the manager of the Walmart store where the alleged incident took place. The affidavit explains that he is familiar with the facts of the case and the allegations made by Ms. Delima, that he personally addressed customers on the night of the incident, and he was the one who commenced the sale. Ms. Delima's argument that Mr. Milam is without personal knowledge of the incident is rebutted by her own statements about his involvement that night. Her argument that Mr. Milam's affidavit was not as complete as she would have liked it to be—because it does not state the "incident location where the Samsung Galaxy Tablet was located inside the store" (Doc. 53, pp. 1-2)—misinterprets the requirements of the federal rules. If the rules allowed a party to strike an opposing party's affidavit each time that party disagreed with it or thought it was incomplete, nary a single affidavit would likely ever pass muster. As such, Walmart is correct that Federal Rule of Civil Procedure 56(c)(4) contains no such completeness or sufficiency requirement. Rather, it requires

only that the affiant make the affidavit on personal knowledge with facts that would be admissible in evidence. The facts provided in Mr. Milam's affidavit meet these requirements. The fact that Ms. Delima disagrees with his affidavit is not a reason to strike it.

Finally, Ms. Delima contends that Mr. Milam is not competent to testify about the matters in his affidavit because he did not "swear under penalty of perjury that all his statement[s were] true and correct." (Doc. 53, p. 2). Beyond the fact that Ms. Delima appears to have quoted the requirements for an unsworn declaration, see 28 U.S.C. § 1746, the affidavit was signed and notarized. See Doc. 44-2, p. 3 ("Subscribed and sworn to before me . . ."). This is sufficient under the rules. Ms. Delima's Motion to Strike Christopher Milam's affidavit (Doc. 53) will be **DENIED**.

### C. Ms. Delima's Motion for Leave to File a Sur-Reply

No party is entitled to an automatic sur-reply. Nevertheless, Ms. Delima seeks leave of Court to file such a sur-reply to respond to Walmart's Reply (Doc. 56) to Ms. Delima's Response to Motion for Summary Judgment. As an initial matter, Ms. Delima's Motion (Doc. 68) purports to attach the proposed sur-reply to the Motion, but nothing was attached to the Motion. However, the Brief in Support (Doc. 69) makes clear that Ms. Delima contends that the unofficial transcript of her deposition should not be used because of possible inaccuracies and misspellings, etc. She has thus attached an errata sheet to her brief in support of this motion. However, as noted previously, Walmart has already filed the amended transcript alongside Ms. Delima's errata sheet as a separate document (Doc. 72). Apart from this, the Court can identify no new arguments that she proposes to make in the sur-reply that have not already been made in her initial response.

5

Therefore, the Court finds no good justification to allow Ms. Delima to file a sur-reply. Ms. Delima's Motion for Leave to File (Doc. 56) is **DENIED**.

### D. Ms. Delima's Motion to Suppress All Parts of Her Deposition

Finally, Ms. Delima moves to suppress all parts of her deposition transcript (Doc. 70). She contends, *inter alia*, that the entire transcript of the deposition must be suppressed because:

- The Officer taking the deposition did not state on the record the business address where it was being taken in violation of Rule 30(b)(5)(A)(i);

- The Officer did not identify all persons present during the deposition in violation of Rule 30(b)(5)(A)(v);

- At the end of the deposition, and in violation of Rule 30(b)(5)(C), the officer did not state on the record that the deposition is complete and did not set out stipulations made by the attorneys about custody of the transcript or recording and of the exhibits;

- She has not yet had the chance to review her deposition or the transcript of the deposition for accuracy;

- Use of the deposition transcript against her in Walmart's Motion for Summary Judgment "was detrimental to plaintiff's case." (Doc. 70, p. 1).

None of these reasons justify suppression of any part of the deposition transcript. To the extent that any of Ms. Delima's first three reasons for suppressing the deposition transcript have any merit, she has waived her objections as to these issues because they are objections to the taking of the deposition. Under Federal Rule of Civil Procedure 32(d)(3)(B), objections relating to the taking of the deposition that concern errors or irregularities are waived if:

> i) it relates to the manner of taking the deposition, the form of a question or answer, the oath or affirmation, a party's conduct, or other matters that might have been corrected at that time; and
>
> (ii) it is not timely made during the deposition.

6

The first three reasons Ms. Delima gives in support of her motion to suppress are matters that clearly relate to the manner in which the deposition was taken and, therefore, could have been corrected at that time. However, there is no assertion (much less proof) that she made these objections at that time. Under Rule 32(d)(3)(B), these objections have been waived.

Ms. Delima's argument that she has not yet had time to review the transcript for accuracy is belied by the fact that she has taken the time to create a multi-page errata sheet.[2] She clearly had the chance to review the draft deposition transcript and make any necessary corrections—corrections, the Court would note, which have been included in the summary judgment record. (Doc. 72). Her fourth objection is thus without merit.

To the extent that Ms. Delima now seeks to object to how the testimony was prepared, transcribed, signed, or dealt with, those objections are also waived. Under Rule 32(d)(4), any objections related to these areas are waived "unless a motion to suppress is made promptly after the error or irregularity becomes known or, with reasonable diligence, could have been known." Ms. Delima first learned of these "errors" when she reviewed the transcript and compiled an errata sheet. Indeed, she attempted to file that errata sheet in a document filed on November 27, 2018. *See* Doc. 66. The Court ultimately struck that document because it was an unauthorized sur-reply. *See* Doc. 67. Nevertheless, it does indicate that, as of November 28, she had reason to suspect that there were errors in how the deposition was transcribed. Nevertheless, she waited until approximately two weeks later, on December 11, to move to suppress the transcript on

---

[2] She was also allowed to videotape her deposition, which served as another avenue for her to ensure the accuracy of the testimony she gave.

7

that basis. However, Rule 32(d)(4) requires a motion to be filed "promptly" after the error or irregularity became known. A two-week delay does not constitute prompt filing.

Finally, Ms. Delima objects that Walmart has used her deposition transcript in a way that has been unfavorable to her case. Just as with her attempt to strike an unfavorable affidavit, her belief that her testimony might undermine her own case does not equate to a reason to strike it from the record. As such, Ms. Delima's Motion to Suppress all parts of her deposition transcript (Doc. 70) is **DENIED**.

### E. Walmart's Motion for Summary Judgment

The legal standard for summary judgment is well established. Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as matter of law. *See* Fed. R. Civ. P. 56(c); *Murchison v. Rogers*, 779 F.3d 882, 887 (8th Cir. 2015); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Walmart's summary judgment argument is premised on two contentions: 1) that it owed no duty to Ms. Delima because the allegedly dangerous condition was open and obvious, and 2) that even if it owed a duty to her, there is no evidence that it breached this duty. The Court considers each argument in turn.

First, Walmart contends that any duty it would otherwise have owed to Ms. Delima as an invitee to its store was obviated by the fact that the dangerous condition (here, the

crowd that Ms. Delima alleges rushed into her and caused her injuries) was an open and obvious one. Under governing Arkansas law, "[a] property owner has a general duty to exercise ordinary care to maintain the premises in a reasonably safe condition for the benefit of invitees." *Black v. Wal-Mart Stores, Inc.*, 316 Ark. 418, 419 (1994). An exception to this general rule exists, however, for open and obvious dangers. Under the obvious danger rule, "any duty owed by an owner or occupier of land to a business invitee ends if the plaintiff knows of the danger." *Jenkins v. Int'l Paper Co.*, 318 Ark. 663, 670 (1994). A few definitions are in order before moving to the analysis of whether this condition was an open and obvious known danger. As Arkansas courts have held, a dangerous condition is obvious when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Van DeVeer v. RTJ, Inc.*, 101 S.W. 3d 881, 885 (Ark. Ct. App. 2003). Moreover, before the obvious danger rule applies, the danger must also be known to the plaintiff, which means "not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves." *Id.* In other words, before a landowner's duty is eliminated, "the condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated." *Id.*

The Court cannot conclude as a matter of law that the condition of the crowd and the danger that it posed to Ms. Delima was open and obvious, especially when it considers—as it must on a motion for summary judgment—the evidence in the light most favorable to Ms. Delima, the non-movant. Walmart primarily argues here that Ms. Delima must have known of the danger posed by the crowd because she, as an experienced

Black Friday shopper, had attended previous Black Friday sales at Walmart, including an earlier sale that very night.[3] Moreover, Walmart points to Ms. Delima's deposition testimony where she testifies that she stood toward the front of the crowd line and admitted to watching the crowd grow behind her.

In the Court's view, however, this is not enough to establish as a matter of law that the crowd was an open and obvious danger that Ms. Delima should have appreciated. Walmart's argument is deficient in one crucial respect: nowhere is there proof that Ms. Delima had an awareness of the danger that the crowd posed. In short, while Walmart has demonstrated that Ms. Delima had "knowledge of the existence of the condition" (*i.e.*, the growing crowd), it has not demonstrated that she ever appreciated the probability or gravity of the threatened harm. *Van DeVeer*, 101 S.W. 3d at 885. In fact, the undisputed testimony is that although she had attended holiday sales—including on that same night—not once had she ever suffered injuries as a result. Nothing in the record establishes that Ms. Delima had any idea that this particular crowd would have posed a danger that previous crowds at these sales had not. In short, while there is evidence that Ms. Delima clearly appreciated that individuals besides herself were lining up to buy the Samsung Galaxy tablet (and that there were many of these individuals), there is no indication that she had an appreciation that this crowd would ultimately trample her once Walmart announced commencement of the sale. Without that element, though, Walmart's argument boils down to a disputed question of fact—whether a reasonable person in Ms.

---

[3] Technically speaking, the sale in question occurred on Thanksgiving night of 2014. However, the Court uses "Black Friday" sale in this context to signify the type of sales that attract large number of shoppers because of the extensive sales offered by retailers such as Walmart.

Delima's position would have appreciated the danger posed by the condition—that the Court cannot resolve on summary judgment. Because a jury could find that such a shopper would not have appreciated the danger that the crowd posed, summary judgment is improper.[4]

Walmart's second argument fares no better. Walmart argues that even if it owed a duty to Ms. Delima on the night of the sale, there is no evidence in the record that it breached that duty. Walmart argues that Ms. Delima did not allege or develop evidence that it lacked adequate staffing or training and points to the almost 200 associates who were clocked in and working on the night of the sale. See Doc. 45, p. 5. It additionally notes that it hired four off-duty law enforcement officers and followed its standard procedures. These facts are all well and good, but they all miss the mark. No matter how prepared Walmart may have been—or believed itself to be—Ms. Delima also alleges that Walmart was negligent in how it conducted the sale. For instance, her deposition testimony was that parts of the crowd were not organized behind her but started to line the sides of aisles. She testified that she then asked the Walmart and security personnel what they planned to do about that but received no response. Moreover, she contends that at prior sales (including the first one that night), Walmart had well-organized lines

---

[4] Walmart's citation to other cases where courts have found as a matter of law that dangers were open and obvious suggest an additional reason for hesitation. For instance, Walmart cites cases involving exposed electrical lines, uncovered swimming pools, oil rooms with slick floors, etc. However, in none of those cases did the threat posed by the danger change. In short, the open and obvious nature of those dangers was static. Here, although Ms. Delima saw the crowd grow, there was no evidence that she perceived that it posed a threat to her (i.e., no testimony that they bumped into her before the sale, or grew raucous, or did anything other than queue until the manager opened the sale and suddenly "like a gate lifted" and "the people [came] boom right away" upon her back. (Doc. 72, pp. 11, 12).

11

and presented shoppers with a number[5] so that it could effectively control the crowd, measures that Ms. Delima (and her daughter) contend were not implemented at the 8:00 PM sale and could have, in their view, prevented the injuries that Ms. Delima sustained when she was pushed against shelves and displays by the rushing crowd. This testimony creates questions of fact about whether Walmart's handling of the 8:00 PM sale was negligent and exacerbated the likelihood that someone in Ms. Delima's position would be injured. As such, summary judgment is improper.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Ms. Delima's Motion to Strike Uncertified Rough Draft Transcript (Doc. 51), Motion to Strike Christopher Milam Affidavit (Doc. 53), Motion to File Sur-Reply (Doc. 68), and Motion to Suppress all parts of her deposition (Doc. 70) are **DENIED.**

**IT IS FURTHER ORDERED** that Walmart's Motion for Summary Judgment (Doc. 44) is also **DENIED.**

**IT IS SO ORDERED** on this 21st day of December, 2018.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[5] Presumably, the number system is used to ensure that the merchandise could be distributed on a first come, first served basis.

12