IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**KRYSTAL MEGAN DELIMA**                                                                                  **PLAINTIFF**

v.                                             **CASE NO. 5:17-CV-5244**

**WAL-MART STORES ARKANSAS, LLC**                                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiff Krystal Megan Delima's Motion for a New Trial (Doc. 141). The Court has also received a Response in Opposition (Doc. 155) from Defendant Wal-Mart Stores Arkansas, LLC ("Walmart"). For the reasons explained below, Ms. Delima's Motion is **DENIED**.

### I. BACKGROUND

Ms. Delima filed her complaint against Walmart on November 27, 2017. At bottom, her lawsuit claims that she was injured as a result of Walmart's failure to properly organize and conduct a holiday sale at its Siloam Springs Walmart store on November 27, 2014. Her original Complaint (Doc. 1) sought compensatory and punitive damages totaling over two million dollars. After denying Walmart's motion for summary judgment, the case proceeded to a three-day jury trial. On February 22, 2019, the jury returned with a verdict in favor of Walmart. (Doc. 138). A few weeks later, Ms. Delima filed the present motion.

### II. LEGAL STANDARD

Under Rule 59 of the Federal Rules of Civil Procedure, a district court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." A motion for a new trial may be granted if "the verdict is against the weight of the evidence, . . . the damages are excessive, or . . . for other

1

reasons, the trial was not fair to the party moving." *See Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1017 (8th Cir. 2001) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). A motion for a new trial may also "raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *See id.* The decision whether to grant a new trial is committed to this Court's discretion. *See id.*

## III. DISCUSSION

Ms. Delima recites numerous grounds upon which she bases her request for a new trial. The Court considers each reason in turn.

### 1. Ms. Delima's Laptop

Ms. Delima first claims that she was unable to effectively participate in the Court's final jury instruction conference because she could not access the internet on the last day of trial due to her battery in her laptop dying. It seems from the briefing that the laptop and/or its charger was left in the courtroom on the preceding day. Although not explained with much clarity, if Ms. Delima's argument is premised on the notion that she wasn't able to charge her device from the courtroom on the day of the final jury instruction conference, it is without merit. Counsel are able to plug in their devices using the outlets that are directly beneath each counsel table in the courtroom.

To the extent Ms. Delima is implying that she was unable to send the Court comments on proposed final instructions because she left her charger in the courtroom and therefore faced a laptop with a dead battery when she returned to her hotel for the evening, the Court similarly finds this reason unpersuasive. First of all, her failure to bring her charging equipment home with her was a problem entirely of her own making. It is not

2

the type of procedural irregularity justifying a new trial. Moreover, the argument that the dead battery prevented her from meaningfully participating in the jury instruction conference is simply belied by the record. For one thing, the Court consulted with the parties on jury instructions multiple times over multiple days, distributing at least two separate draft versions of the instructions in hard copy form. Moreover, the record shows that Ms. Delima meaningfully participated during each conference. *See, e.g.*, Docs. 134, 135 (compilation of email communications between the Court and counsel over proposed jury instructions). Contrary to her assertions now, Ms. Delima did participate in these conferences by suggesting specific jury instructions that she desired to be incorporated into the final set. Thus, any complications caused by her laptop were of her own making and did not hinder her ability to fully participate in the jury instruction conferences.

### 2. Failure to Give Certain Requested Jury Instructions

Ms. Delima's suggestion that her laptop prevented her from assisting the Court in finalizing jury instructions is also at odds with her second purported ground for a new trial: that the Court refused to give certain jury instructions that she requested. According to Ms. Delima, the Court should have given instructions on the following: spoliation of evidence, [ad]verse inference, aggravation of pre-existing condition, loss of normal or quality of life, past pain and suffering, future pain and suffering and mental anguish, medical expenses, and punitive damages. As an initial matter, the Court did in fact instruct the jury that it could award damages to Ms. Delima for medical expenses as well as past and future pain and suffering and mental anguish. *See* Doc. 136, p. 15 (the Court's final jury instruction on the measure of damages). The Court now considers the other requested instructions.

3

Ms. Delima first contends that the Court should have given both a spoliation of evidence instruction and an adverse inference instruction. Both of these requested instructions center around a copy of the video surveillance footage that Walmart has from the night in question. Ms. Delima argues, as she did in two separate motions to compel (Docs. 24, 82), that Walmart did not produce video footage that actually depicted the alleged incident. However, as this Court ruled both times in denying Ms. Delima's motions, see Docs. 32, 109, the fact that the video footage in question did not catch a bird's eye view[1] of the alleged incident does not mean that Walmart has intentionally withheld video surveillance. Walmart has consistently maintained, and the witnesses at trial explained in extensive detail, why the video footage that was produced was the best footage of the area where the incident occurred. Ms. Delima's suggestions to the contrary are simply not supported by the record. There is no evidence that the footage produced by Walmart and submitted as a joint stipulated exhibit at trial was intentionally altered or that other footage was withheld from production. Therefore, neither an adverse inference or spoliation instruction was appropriate.

Ms. Delima next contends that the jury should have been instructed on two additional elements of damages: aggravation of a pre-existing medical condition and future medical expenses. After hearing oral argument from both parties during the final jury instruction conference, the Court ruled that the evidence at trial did not support giving

---

[1] Ms. Delima appears to be laboring under the impression that Walmart should have had a camera directly above the incident. However, as the witnesses testified, Walmart's camera coverage of the "grocery action alley" where the sale took place is considerably less extensive than in other parts of the store, as customers tend to steal electronics and personal items, not vegetables.

either of these instructions. As to her claim for aggravation of a pre-existing condition, Ms. Delima contends that her anxiety was worsened as a result of the alleged incident. In support, she called Dr. Clemens to the stand to explain her medical history. However, as Walmart rightly notes, Dr. Clemens expressly declined to testify that Ms. Delima's anxiety was aggravated by the incident. Ms. Delima offered no other proof sufficient to justify instructing the jury on this element. As to future medical expenses, the Court also ultimately removed it from the measure of damages instruction it gave the jury. The reason was simply because Ms. Delima failed to introduce evidence or testimony sufficient to enable a jury to conclude that she has a continuing need for future medical expenses related to the incident. Relatedly, there was no evidence from which a jury could reasonably determine the amount of such future expenses. Therefore, the Court continues to conclude that these instructions were properly denied.[2]

Finally, Ms. Delima argues that the jury should have been instructed on punitive damages. In her motion for a new trial, Ms. Delima contends that "Plaintiff has clear evidence through preponderance of the evidence" of Walmart's negligence. (Doc. 142, p. 11). However, the standard is not preponderance of the evidence. Under Arkansas law, as reflected in AMI 2218, a plaintiff may not recover punitive damages unless, *by clear and convincing evidence*, she proves that the defendant either: 1) knew or should have known that its conduct would lead to injury and continued with malice or in reckless

---

[2] Of course, some of this discussion as to what damage elements should have been submitted to the jury strikes the Court as more of an academic exercise given that the jury didn't even get to the question of damages because it found that Ms. Delima had not proven by a preponderance of the evidence that Walmart was liable. *See, e.g., Green v. Am. Airlines, Inc.*, 804 F.2d 453, 456 (8th Cir. 1986) ("Because the jury returned a verdict for [the Defendant], the damage issue was not reached, and any error in instructions or evidence relating to damages was harmless.").

disregard of the consequences, *or* 2) that the defendant intentionally pursued a course of conduct for the purpose of causing injury. *See* Ark. Code Ann. § 16-55-206. There simply was no evidence, much less clear and convincing evidence, that either of these two conditions was met. Therefore, a punitive damages instruction was inappropriate.

### 3. Use of Separate Interrogatories for Each Element of Damages

Relatedly, Ms. Delima contends that the Court should have used separate interrogatories for each element of damages. The Court disagrees. Its Final Instruction No. 14 followed the AMI, giving a combined instruction as to all of the submitted elements of damages and then breaking down and explaining each of those elements in a separate instruction. There was no reason to require the jury to complete separate interrogatories on each element. And, again, because the jury never reached the question of damages at all, this is certainly not a factor which would justify a new trial.

### 4. Improper Testimony of Her Medical Provider

Ms. Delima next argues that her own medical provider, Dr. Clemens, gave improper testimony regarding myalgia and fibromyalgia during cross examination by Walmart. But, Ms. Delima failed to object at any point to any of Dr. Clemens testimony during this cross-examination. And, Ms. Delima never attempted to re-direct to refocus the jury on what she believes was most important about these two medical conditions. Moreover, Dr. Clemens' records were a part of the group of exhibits that were admitted as stipulated exhibits at the beginning of trial. Therefore, this reason does not support her request for a new trial.

### 5. Court's Reference to the Incorrect Defendant

Ms. Delima next contends that the Court incorrectly referred to the Defendant as "Walmart Corporation" at the beginning of the trial.[3] Apparently, Ms. Delima believes that the Court's use of "Walmart Corporation" somehow prejudiced her case. But, Ms. Delima never explains why she believes this to be so, and the Court is simply at a loss to see how this misstatement in any way prejudiced her case or tainted the jury.

### 6. Ms. Delima's Exhibits

Ms. Delima's sixth reason for a new trial is because the jury did not see her Blue Cross Blue Shield summary of her medical charges or an Occupational Safety and Health Administration fact sheet with guidelines for retailers conducting special sales.

Ms. Delima is correct that these exhibits were not received into evidence at trial. But, the failure to do so is entirely a creature of her own making. The Court at numerous times during the trial explained that a party may not simply have documents admitted into evidence at will. Rather, the party must lay a foundation for their introduction and then move for their admission. Ms. Delima failed to do both things for each item.

Moreover, it is simply untrue that only Walmart's exhibits were introduced.[4] The parties each submitted proposed exhibits in accordance with the Court's scheduling order. After review, Walmart advised Ms. Delima that some of her exhibits were missing

---

[3] Although any misstatement of Defendant's name by the Court was unintentional, it is likely due in part to the fact that Ms. Delima's initial Complaint named "Walmart Corporation" as the defendant. At the Court's case management hearing, Defendant explained that the correct entity to be sued was Wal-mart Stores, Arkansas, LLC.

[4] For instance, one of the exhibits that received the most attention at trial, the video footage from the incident, was a plaintiff's exhibit. Nevertheless, it was included in the group of joint exhibits introduced at the beginning of trial.

pages and the numbering of the exhibits was quite unusual. *See* Doc. 133-1, pp. 9, 12. Nevertheless, it agreed to stipulate to the admission of many of these exhibits *en masse* at the beginning of trial. Thus, where the parties both included the same exhibit on their exhibit list and to avoid any confusion and ensure that the complete versions of the exhibits were submitted, the Court combined Walmart's complete version of those agreed-to exhibits into a Joint Exhibit packet. *Id.* at p. 12. The Joint Exhibit packet had an index that cross-referenced both parties' original exhibit numbers to ensure that it was clear that both parties had originally intended for these exhibits to be admitted. The Court then sent an email to the parties explaining this process and providing an opportunity for counsel to review the joint exhibits and ensure that there were no objections. The Court never received any objections from Ms. Delima, and the parties jointly moved these agreed-to exhibits into evidence at the beginning of trial.

For all of these reasons, Ms. Delima is not entitled to a new trial because of her failure to get any additional exhibits into evidence.

### 7. Misconduct of Defense Counsel[5]

Ms. Delima next accuses Defense counsel of misconduct. Specifically, she claims that Walmart's attorneys concealed from her specific facts surrounding two maps of the layout of the Walmart store that were produced to her in response to various Requests for Admission ("RFA") and at the Court's direction following a discovery dispute conference. In short, Ms. Delima served a lengthy list of RFAs on Walmart during

---

[5] Ms. Delima has already been cautioned once by the Court to refrain from accusing other parties of misconduct without sufficient justification. (Doc. 152, p. 3). As explained below, the Court again finds little support for Ms. Delima's accusations and would reiterate its admonishment to her here.

discovery in this matter. Many of those RFAs attempted to nail down where in the Walmart store the sale took place that night. Because of the number and nature of these RFAs, Walmart filed numerous objections. To obviate the need for lengthy responses and to clear the matter up, the Court requested that Walmart provide Ms. Delima a copy of the store layout that night. Ms. Delima then took one of the two maps Walmart provided and converted it into two blown-up exhibits, labeled Joint Exhibits 5A and 5B. She then sought to examine witnesses by having them mark on the exhibits where the sale of the Samsung Galaxy tablet occurred in the store.[6] When store manager Christopher Milam took the stand, Ms. Delima asked him about the legend that appeared on the blown-up exhibits. That legend did not list the Samsung Galaxy tablet. Mr. Milam informed Ms. Delima that the reason for this was because the legend on that map corresponded to the 6PM sale, and not the 8PM sale, which featured the Samsung Galaxy tablets.

From this set of events, Ms. Delima contends that Walmart and its attorneys knowingly provided incorrect and/or misleading exhibits to her during discovery. The Court disagrees. Walmart was directed by the Court to provide these maps of the layout of the store. The fact that the Samsung Galaxy tablet did not appear on one of these maps does not indicate that Walmart intentionally misled her. It was simply complying with the Court's order to turn over any maps in its possession that would depict the layout of the store on the night in question. Moreover, the location of the sale has little to do with the ultimate issue in this case—whether or not Walmart negligently conducted the sale.

---

[6] Her intent in doing so appears to the Court to be related to her contention that the surveillance video footage did not capture the area where the sale took place. However, as noted above, despite asking numerous questions to numerous witnesses on this issue, Ms. Delima failed to establish testimony that would undermine the accuracy of the video footage provided to her in discovery.

Finally, to the extent that Ms. Delima believed that whether the sale took place in one part of grocery action alley or another part was so fundamental to her case, Walmart is correct that she spent a great deal of time—probably the majority of her case—examining and cross-examining witnesses about the location of the sale. Therefore, the Court finds that the jury heard more than sufficient evidence on this point and finds nothing in Ms. Delima's argument that would justify a new trial.

### 8. Weight of the Evidence

Ms. Delima next contends that a new trial is warranted because the jury's verdict went against the weight of the evidence. Ms. Delima makes no argument in support of this assertion, and the Court finds little in the record to support it. The fact is that the jury heard hours of testimony regarding the incident in question, the steps that Walmart took to prepare for the sale, and Ms. Delima's alleged injuries. After hearing all of this evidence, the jury simply disagreed with Ms. Delima's characterization of the facts. The jury could easily have—and apparently did—credit the testimony of Heather Reddell, Christopher Milam, and Officer Timothy Filbeck that Walmart took extensive precautions when organizing and conducting the sale. Thus, the jury had sufficient evidence from which to conclude that Walmart was not negligent in how it conducted the sale and that it did not breach any duty it might have owed to Ms. Delima. While Ms. Delima may believe that there is sufficient evidence in the record on which a jury could have found Walmart liable, the law is clear that a new trial should not be granted where "reasonable persons can differ in evaluating credible evidence." *Jacobs Mfg. Co. v. Sam Brown Co.*, 19 F.3d 1259, 1267 (8th Cir. 1994). Here, the jury simply did its job "to choose between plausible versions of the evidence." *Id.*

### 9. Absence of Melanie Houchin

Ms. Delima's final reason for requesting a new trial is because one of the witnesses she desired to call, Melanie Houchin, did not appear. Ms. Houchin was an assistant manager at the Walmart store at the time of the incident, and she was the Walmart employee who signed her name to the written statement that Ms. Delima completed on the night of the sale and whose name appears on Walmart's internal report of the incident.[7] Ms. Delima complains that Walmart failed to call Ms. Houchin during the trial, referring to her as one of Walmart's "key" witnesses.

As an initial matter, Walmart had no duty to call Ms. Houchin in its case. As the jury was correctly instructed, the burden of proof in this case was at all times on Ms. Delima. Walmart was not required to call any witnesses in its defense or to call witnesses that Ms. Delima would have liked to question. As Walmart rightly notes, the correct way to ensure the attendance of key witnesses you desire to examine at trial is to properly serve them with a subpoena. However, as the Court found during its side bar conference once Ms. Houchin failed to appear, it seems that Ms. Delima failed to properly serve Ms. Houchin at the Walmart store in Siloam Springs where the incident occurred. The problem was that Ms. Houchin had not worked at that Walmart for some time.[8] Therefore, the

---

[7] These two documents were included in the exhibits received as joint exhibits by stipulation of the parties at the beginning of the trial.

[8] In fact, Christopher Milam testified that it had been years since she left that particular Walmart store, and that he had learned recently that, after transferring to a Walmart in Missouri, she had not worked for Walmart *at all* since around 2016. *See* Doc. 143, p. 35.

Court found that she had not perfected service of the subpoena under Rule 45, which generally requires "delivering a copy to the named person." F.R.C.P. 45(b)(1).[9]

However, the Court agrees with Walmart that even if Ms. Houchin had been properly served with a subpoena in this case, Ms. Delima has not demonstrated how her absence warrants a new trial. Ms. Delima intended to ask Ms. Houchin questions about Walmart's preservation of the video footage from the night in question, about the location of the incident, and about her statement in the incident report that no other customers witnessed the alleged incident.

However, this testimony would likely have been objectionable as cumulative. For instance, the jury heard extensive testimony concerning the preservation of the video footage, including from the Walmart employee, Heather Reddell, whose job it was to ensure that Walmart complied with its own policies on evidence preservation. Ms. Delima had a full and fair chance to cross-examine Ms. Reddell and the other Walmart witnesses with knowledge of the video, and Ms. Delima offers no explanation as to how or why Ms. Houchin's purported additional testimony on these same issues was necessary given the testimony that had already been elicited. Similarly, as explained in more detail above, the jury heard numerous hours of testimony from witnesses concerning the precise location

---

[9] The Court would note that Walmart's pre-trial disclosure sheet listed Melanie Houchin as a witness it expected to call. See Doc. 79, p. 6. It also explained that she "may be contacted through Walmart's counsel of record in this matter." Id. However, the Court does not interpret this to be a statement that Walmart would make its former employee available for trial without a subpoena, or that it would accept service of a subpoena on her behalf. Rather, it merely advised that Ms. Houchin's contact information could be obtained through Walmart's counsel. It appears that Ms. Delima never attempted to acquire this information, from Walmart or any other source, in order to properly serve Ms. Houchin, given that she ended up mailing the subpoena via FedEx to a store where Ms. Houchin had not worked in some time.

where the incident occurred. There again is no indication why additional testimony on that topic would have been necessary or non-cumulative.

Finally, Ms. Delima argues that Ms. Houchin's statement on the incident report that no customers witnessed the incident was false because her daughter did in fact witness the incident. The Court cannot fathom why this would justify a new trial. For one thing, the witness in question, her daughter Zenith Thompson, testified at trial regarding what she saw and heard. The fact that Ms. Delima was deprived of an opportunity to question Ms. Houchin about one alleged misstatement simply has no bearing on the jury's ultimate determination that Walmart was not negligent in how it conducted the sale.

### IV. CONCLUSION

None of the reasons recited by Ms. Delima, alone or in tandem, justify a new trial.

**IT IS THEREFORE ORDERED** that Ms. Delima's Motion for a New Trial (Doc. 141) is **DENIED**.

**IT IS SO ORDERED** on this 10th day of April, 2019.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE